# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KATEN & SONS, INC. and EDWARD C. KATEN,

         Plaintiffs,      3:16-cv-01124 (BKS/DEP)

v.

ALLEGHENY TRUCKS, INC.,

         Defendant.

---

**Appearances:**

*For Plaintiffs:*
Ronald R. Benjamin
Law Office of Ronald R. Benjamin
126 Riverside Drive, P.O. Box 607
Binghamton, NY 13902

*For Defendant:*
Elizabeth A. Weill
Goldberg, Segalla LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

  This litigation arises from the sale of an allegedly defective truck by Defendant Allegheny Trucks, Inc. ("Allegheny") to Plaintiffs Katen & Sons, Inc. and Edward C. Katen ("Katen"). On March 19, 2018, the Court granted in part Allegheny's motion to dismiss several claims asserted in the Amended Complaint, leaving only Katen's claims for breach of contract and fraudulent concealment/inducement remaining. (Dkt. No. 52). Allegheny now moves for

summary judgment on those remaining claims, (Dkt. No. 49), which Katen opposes, (Dkt. No. 57). For the reasons that follow, Allegheny's motion for summary judgment is granted.

## II. FACTS[1]

Edward C. Katen is the owner and sole employee of Katen & Sons, Inc., (Dkt. No. 57-12, ¶ 1), a demolition waste disposal company, (Dkt. No. 49-4, at 12). Katen contacted Allegheny, a truck dealer located in Altoona, Pennsylvania, (Dkt. No. 15, ¶ 3), sometime in September 2013 after he saw their advertisement in Truck Trader magazine for a 2011 International 4400 SBA 4x2 truck. (Dkt. No. 49-3, ¶¶ 2–5; Dkt. No. 49-4, at 16–17, 19; Dkt. No. 57-12, ¶¶ 2–5). On September 18, 2013, before the parties signed the contract, Plaintiff obtained a quote from a company called Hacker's Packers regarding potential modifications to the truck. (Dkt. No 49-3, ¶ 6; 49-5, at 2). On October 2, 2013, Katen met with Allegheny sales manager Dan Williams; Katen claims that Williams told him that "the Truck would be 'perfect' for his needs." (Dkt. No. 49-3, ¶ 8). Katen agreed to purchase the truck and the parties signed a contract the same day. (*Id.* ¶ 12). The contract's "Terms and Conditions" state, in their entirety:

> Purchaser agrees that this Order includes all of the terms and conditions on both pages hereof,[2] that this Order cancels and supersede[s] any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject covered hereby, that this order shall not become binding until accepted by dealer or his authorized represent[ative]. Purchaser by his execution of this Order

---

[1] Where possible, the facts have been drawn from Allegheny's statement of material facts (Dkt. No. 49-3, at 6–8), Plaintiff's response thereto, (Dkt. No. 57-12, at 2–4), and the attached exhibits, depositions, and affidavits to the extent that they would be admissible as evidence. Undisputed material facts supported by the record are taken from the moving party's statement of material facts, whereas disputed material facts supported by the record are taken from the nonmoving party's submissions. Where facts stated in a party's statement of material facts are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party or not denied at all, the Court has found such facts to be true. *See* L.R. 7.1(a)(3); Fed. R. Civ. P. 56(e).

[2] Despite this reference to "both pages" of the contract within the document's "Terms and Conditions," the copy of the contract accompanying Allegheny's motion to dismiss consists of one page only. (Dkt. No. 49-6, at 2). Katen does not contend that the contract, as attached to Allegheny's motion, is incomplete.

2

> acknowledges that he has read its terms and conditions and has receive[d] a true copy of this order.

(Dkt. No. 49-6, at 2 (emphasis omitted)). The parties agree that no other contracts are at issue in this case, (Dkt. No. 49-3, ¶ 14), and that the contract does not include express provisions that the truck was "in good working order," "fit for operating," or "fit for Plaintiff's rolling-off service," (*id.*, ¶¶ 17–19).[3]

According to Katen, "[o]n the very first day [he] took possession of the truck[,] the engine light came on, he lost power to the engine, and the truck had to be towed back to the shop." (Dkt. No. 57-12, at 2). Katen claims that the truck has required extensive repairs and that, as of April 30, 2018, it had been "off the road being repaired" for a total of 209 days since the day he purchased it. (*Id.*). Katen asserts that he has "incurred expenses in the amount of $13,075.00 for repairs on the truck, and lost earnings in the amount of $153,650.00 as a result of the truck being off the road." (*Id.*).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see*

---

[3] Although they dispute the materiality of the fact, the parties do not dispute that, after taking delivery, Katen had a third party modify the truck by "adding a tarping device to cover the containers" hauled, adding "a hook to haul the containers onto the truck," and shortening the frame. (Dkt. No. 57-7, ¶ 4; Dkt. No. 49-3, ¶ 15).

3

*also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV. DISCUSSION

### A. Breach of Express Contract

In its motion for summary judgment, Allegheny argues that Katen's claim for breach of an express contract "suffer[s] from unavoidable flaws" because it is premised solely on Katen's allegation that the October 2, 2013 contract "provided that the Truck was in good working order and fit for the use of operating in the use of plaintiff's" business. (Dkt. No. 49-3, at 8–9 (quoting Dkt. No. 15, ¶ 14)). Under New York law, the elements of a breach of contract claim are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).[4] "A claim for breach of contract must allege, at a minimum, the terms of the contract, each element of the alleged breach and the resultant damages." *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 337 (E.D.N.Y. 2003); *see also Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) ("In adjudicating express contract claims, '[a] court cannot supply a specific obligation the parties themselves did not spell out.'" (alteration in original) (quoting *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) (explaining that a breach of contract claim "must identify the specific provision of the contract that was breached as a result of the acts at issue"), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).

Here, Katen acknowledges the contract at issue "does not have a specific provision that the truck was to be provided in good working order," (Dkt. No. 49-3, at ¶ 18), "fit for operating[,] or fit for Plaintiff's rolling-off service," (*id.* ¶ 19). Because the express terms of the

---

[4] Although the October 2, 2013 contract was created in Altoona, Pennsylvania, the parties' submissions proceed under the assumption that New York law applies. (Dkt. No. 49-3, at 8; Dkt. No. 57-12, at 15). "Where the parties so assume, the Court need not address choice of law *sua sponte*." *Henneberry v. Sumitomo Corp. of Am.*, No. 04-cv-2128, 2005 WL 991772, at *5 n.3, 2005 U.S. Dist. LEXIS 7475, at *14 n.3 (S.D.N.Y. Apr. 27, 2005).

contract that Allegheny is alleged to have breached do not exist, Katen's claim for breach of an express contract fails as a matter of law.

B.   **Implied Covenant of Good Faith and Fair Dealing**

Having conceded that there was no breach of any express provision of the contract, Katen now argues that Allegheny breached the contract because it breached the covenant of good faith and fair dealing implicit in "every contract made in the state of New York" that forbids a contracting party from "depriv[ing] the other of the right to receive the benefits of the contract." (Dkt. No. 57-12, at 14).

The Amended Complaint does not allege a breach of the implied covenant of good faith and fair dealing, nor does it contain any allegation that might be fairly construed as stating such a claim. Indeed, the Amended Complaint merely refers to express provisions within the contract, alleging that Allegheny "breached the *agreement entered into . . . which provided* that the truck was in good working order and fit for the use of operating in the use of the plaintiff's commercial truck rolling-off service." (Dkt. No. 15, ¶ 14 (emphasis added)). Further, the Amended Complaint does not mention a duty of good faith and fair dealing—it does not even allege that Plaintiff acted in bad faith.[5]

"[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) (rejecting the plaintiff's argument that its breach of contract claim "fairly encompassed" a claim for breach of implied covenant of good faith and fair dealing); *see also Rojo v. Deutsche Bank*, 487 F. App'x 586, 588 (2d Cir. 2012) (concluding that claim for breach of duty of good faith and fair dealing was "waived" where plaintiff "mentioned that claim for the first time in his

---

[5] Because Katen's claims for, *inter alia*, breach of implied and express warranty were previously dismissed, (Dkt. Nos. 13, 52), and not re-alleged in the Amended Complaint, (Dkt. No. 15), the Court need not address what obligations such other theories may impose upon a contracting party.

6

memorandum of law in opposition to summary judgment"). Accordingly, because Katen "never alleged (nor sought to allege) a breach of the implied covenant of good faith and fair dealing at any point during the course of this . . . litigation, it cannot now seek to support its case under such a theory." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (citing *Augienello v. Coast-to-Coast Fin. Corp.*, 64 F. App'x 820, 822 (2d Cir. 2003) (rejecting plaintiff's argument that defendants breached implied covenant of good faith and fair dealing "even if [they] did not violate the express terms of the contracts," on the basis that the complaint failed to make "any mention of a duty of good faith and fair dealing, or allegation that the defendants breached such a duty")).

### C. Fraudulent Inducement

Allegheny moves for summary judgment with regard to the claims for fraudulent inducement and fraudulent concealment on the grounds that Katen has failed to adduce evidence sufficient to raise an issue of fact as to the requisite elements of such a claim. (Dkt. No. 49-3, at 16–23). "Under New York law, in order to prove fraudulent inducement, a plaintiff must show: (i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance." *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 306 (S.D.N.Y. 2010) (internal quotation marks omitted). Finally, the elements of any claim for fraud "must be shown by clear and convincing evidence." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

Katen asserts that Allegheny Sales Manager Dan Williams told him that the truck would be "perfect for his needs," and that he relied upon this statement in deciding whether to enter into the contract to purchase the truck. (Dkt. No. 57-12, ¶ 9). Even assuming that such a statement does not constitute "mere puffery," as Katen contends, (Dkt. No. 57-12, at 5), he has not adduced

7

any evidence indicating that Williams intended to defraud him at the time Williams allegedly made the material false representation.[6] "A plaintiff's claim of fraudulent inducement can be sustained without reference to direct evidence of fraudulent intent if plaintiff pleads and provides evidence of facts that support a 'strong inference that the defendants possessed the requisite fraudulent intent.'" *Enzo Biochem, Inc. v. Johnson & Johnson*, No. 87-cv-6125, 1992 WL 309613, at *11, 1992 U.S. Dist. LEXIS 15723, *35 (S.D.N.Y. Oct. 15, 1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir. 1989)). Such "[i]ntent to decieve must be shown by evidence of 'guilty knowledge or willful ignorance.'" *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (quoting *Schwartz v. Newsweek, Inc.*, 653 F.Supp. 384, 390 (S.D.N.Y.1986)), *aff'd*, 354 F. App'x 496 (2d Cir. 2009).

Here, Katen concedes that he has no "direct proof that Williams knew of the problems and defects with this truck." (Dkt. No. 57-12, at 6). Instead, he argues that his failure to adduce evidence—direct or indirect—of Williams or Allegheny's intent to defraud is "of no moment, because the issue is whether or not Williams *should have known* of the problems with the truck." (Dkt. No. 57-12, at 7 (emphasis added)). Katen cites to no caselaw in support of this proposition, which conflicts with the principle that, under New York law, a fraud claim "demands a high order of proof" and requires plaintiff to prove "a misrepresentation which the defendant *knew to be false* . . . by clear and convincing evidence." *Bikoff v. Dowling*, No. 16-cv-5478, 2018 WL 3979592, at *2, 2018 U.S. Dist. LEXIS 140924, at *3–4 (S.D.N.Y. Aug. 20, 2018) (emphasis added) (citations omitted). In any event, the articles and litigation documents attached to Katen's papers in opposition do not even support Katen's contention that Williams "should have known" of the alleged defect, because they all postdate Williams' alleged misrepresentation on October

---

[6] This is perhaps unsurprising because, as Allegheny notes, (Dkt. No. 49-3, at 19), Katen's counsel conducted no depositions, posed no interrogatories, and served no document requests during the course of discovery, (Dkt. No. 27).

8

2, 2013. (Dkt. Nos. 57-1 (July 11, 2014), 57-2 (May 19, 2017), 57-3 (Jan. 9, 2015), 57-4 (Aug. 14, 2017), 57-5 (Mar. 31, 2016), 57-6 (Mar. 31, 2016)).

Thus, "even giving every favorable inference that might arise at trial to Plaintiffs as non-movants, no reasonable finder of fact could find from the evidence put forward the requisite fraudulent intent." *Century Pac., Inc.*, 528 F. Supp. 2d at 227–28. Accordingly, Katen has failed to adduce evidence sufficient to raise an issue of material fact as to his fraudulent inducement claim, and Allegheny is entitled to summary judgment.

### D. Fraudulent Concealment

The requisite elements of a claim for fraudulent concealment are substantially identical as those for fraudulent inducement described above, with the added requirement that a plaintiff must show that the defendant had a duty to disclose the information withheld. *Bermuda Container Line Ltd. v. Intl. Longshoremen's Ass'n, AFL-CIO*, 192 F.3d 250, 258 (2d Cir. 1999) (explaining that, under New York law, a fraudulent concealment claim must show that: "(1) the defendant failed to disclose material information that he had a duty to disclose, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance" (internal citations and quotations omitted)). Even assuming that Allegheny did have a duty to disclose material information, Katen has failed to adduce any evidence indicating that Allegheny intended to defraud him by withholding information that the truck was defective for the same reasons described above. Accordingly, Allegheny is entitled to summary judgment on Katen's claim for fraudulent concealment.[7]

---

[7] In light of this ruling, the Court need not address the parties' arguments regarding whether Katen is able to establish the damages element of the asserted claims without expert testimony.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Allegheny's motion for summary judgment (Dkt. No. 49) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 15) is dismissed with prejudice; and it is further

**ORDERED** that the Clerk is respectfully directed to enter Judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: September 28, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge